IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| ROLAND DIGITAL MEDIA, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. _____ |
| CITY OF LIVINGSTON, TENNESSEE, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## COMPLAINT

This case deals with the City of Livingston, Tennessee's use of different criteria and a different set of rules when it comes to how the City handles sign applications depending on who is applying. When it comes to sign applications submitted by Plaintiff Roland Digital Media, Inc. ("Roland"), the City adopts very stringent criteria and a strict set of rules. However, when it comes to other businesses, advertisers, and those with close relationships to City officials that want to display signs, the City applies a very lenient set of rules and/or criteria – or even fails to enforce any rules at all. As a result of the City's inconsistent application of its Sign Regulations and its preferential treatment for preferred speakers, Roland's free speech rights under the First Amendment to the United States Constitution, and equal protection rights under the Fourteenth Amendment have been violated.

## PARTIES

1. Plaintiff Roland is a Tennessee Corporation duly authorized to transact business in Tennessee. Roland is a family business that specializes in erecting and operating signs that are used by itself, as well as businesses, individuals, churches, charities, and public governmental

agencies to post messages of their choice, including, but not limited to commercial and non-commercial messages. Roland's owner – David Roland – has been in the sign business for over 40 years and has built and operated hundreds of signs in Tennessee.

2. Defendant City of Livingston is a political subdivision of the State of Tennessee located in Overton County and may be served with process upon its City Attorney, André S. Greppin at Moore, Rader & York, P.C., 46 North Jefferson Avenue, Cookeville, TN 38501.

## JURISDICTION AND VENUE

3. Roland's claims arise under the First and Fourteenth Amendments to the United States Constitution and Section 1983 of the Civil Rights Act. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

4. Defendant is subject to the jurisdiction of this Court and venue in the Northeastern Division is proper under the facts and circumstances as alleged herein.

## GENERAL ALLEGATIONS

5. Roland and its owner, David Roland, have been in the business of operating outdoor advertising signs for over 40 years.

6. During its 40 years in business, Roland has developed hundreds of static billboard locations throughout the State of Tennessee and, more recently, has developed 42 digital billboard locations in 22 counties in the State.

7. Local churches, businesses, politicians, and medical professionals use Roland's signs to convey important information to the public.

8. The following images are but a small sample of the types of commercial and noncommercial advertising that the aforementioned entities display using Roland's signs:

# CHURCHES














# POLITICAL










9. In connection with its outdoor advertising business, Roland frequently researches areas of Tennessee where it believes new signage is most needed. Roland focuses its research on highly-trafficked roadways adjacent to commercially-zoned properties where new signage is appropriate and permitted by Tennessee law.

10. One of the areas where Roland investigated new outdoor advertising opportunities so it can get its commercial and non-commercial messages out to citizens and visitors was the City of Livingston.

11. Livingston could benefit from new outdoor advertising opportunities that would encourage motorists traveling on Highway 111 and Highway 52 to visit the businesses, organizations, and churches in downtown Livingston rather than bypassing the City and continuing south on Highway 111 towards Cookeville.

12. Roland contacted landowners in Livingston to discuss the prospect of leasing their property for the display of a new sign in exchange for substantial rent payments. The landowners were interested in earning additional revenue from their property and were excited about this possibility. They agreed that more opportunities for messaging potential customers and citizens are needed in Livingston.

13. Roland obtained permission for the owners of several properties in Livingston to post signs on their properties.

14. Thereafter, Roland first applied for a new outdoor advertising sign at 106 W. 7th Street in Livingston.

15. In response to its application, Roland received an email the City's former Building Inspector and Codes Officer, Walter Rutherford.

16. Mr. Rutherford stated he had some "initial questions concerning what will be advertised on the proposed sign. Will it be used for Off-Premise and On-Premise advertising or just one."

17. Roland promptly responded, stating:

The sign will be used for every kind of message. As you may know, I have been in business in this area for decades. I will use the sign for many on-premise and local messages. I will also use the sign for religious and non-profit messages. I am glad to commit that the sign will be used for local charities and the promotion of the community, downtown, events, etc. If we need to put this in writing, just let me know and I will prepare a condition on the permit.

18. Mr. Rutherford ultimately denied Roland's application on the grounds that the proposed digital sign would be a "flashing sign" under Section 11-202.22 of the Zoning Ordinance and therefore was purportedly prohibited.

19. Even though under federal law it was not required to do so, Roland exhausted its administrative remedies regarding this denial by filing an appeal to the BZA pursuant to Section 11-217.3 of City's Zoning Ordinances.

20. Roland's appeal explained that Mr. Rutherford's reliance on Section 11-203.9.2(e) was erroneous because Roland's proposed digital display did not qualify as a "flashing sign" since the messages that will be displayed on the sign will be maintained in a stationary position and will remain constant in intensity and color at all times when in use.

21. Roland also explained that, when interpreting similar prohibitions on "flashing signs," courts have concluded that such provisions do not prohibit digital signs like the one proposed by Roland because such signs merely periodically change static images rather than flash. E.g., Visible Props., LLC v. Village of Clemmons, 876 S.E.2d 804, 812 (N.C. Ct. App. 2022).

22. Roland advised the City that the Federal Highway Administration has made it clear that signs that change messages using digital technology – like the one proposed by Roland – "do not violate a prohibition against 'intermittent' or 'flashing' or 'moving' lights." See FHWA Memorandum dated Sept. 25, 2007 (Exhibit A hereto). The Tennessee Department of Transportation has also found that digital signs like the one proposed by Roland are permissible and do not run afoul of the State's prohibition on signs with "flashing, intermittent, or moving lights." Compare Tenn. Code Ann. § 54-21-119 (allowing signs using digital technology), with Tenn. Code Ann. § 54-21-103 (prohibiting flashing signs).

23. Roland also explained that Mr. Rutherford's denial of Roland's application on the grounds that the proposed sign would violate the prohibition on "flashing signs" was also

improper because it was a marked departure from the City's prior interpretation of its Zoning Ordinance.

24. Roland provided several examples of occasions where Livingston allowed sign applicants like Roland to install signs using digital technology.

25. The following images are but a small sample of signs using digital technology in the City:[1]



---

[1] Further examples are already in Roland's possession and even more examples will be uncovered through formal discovery.





26. Roland further explained that the City's refusal to allow Roland to utilize digital technology was problematic because the Zoning Ordinance exempts government signs from regulation. See Zoning Ordinance, §§ 11-203.9.1(h), 11-203.9.3(c) ("no limitation, restrictions, or requirements herein are applicable to government signs"). As such, the City can lawfully post a sign identical in all respects to the sign requested by Roland.

27. While its initial appeal was pending, Roland submitted nine additional sign permit applications for signs to be located at 4205 Bradford Hicks Drive, 5476 Bradford Hicks Drive, 5490 Bradford Hicks Drive, 915 N. Church Street, 301 W. 7th Street, 716 N. Church Street, 1185 Preston Street, 512 W. Main Street, and 925 N. Church Street in the City of Livingston.

28. These additional applications were also denied by Mr. Rutherford on the basis that they would constitute "flashing signs" that are prohibited by the Zoning Ordinance.

29. Even though it was not required to do so in order to pursue these claims, Roland also filed an administrative appeal regarding these denials with the City's BZA.

30. Even though it was required to do so by its own Zoning Ordinance the City never informed Roland of the hearing date for its first appeal.

31. As a result, Roland was shocked to learn – through a hearing notice in the local paper – that the City had scheduled Roland's appeal for a hearing in front of the BZA in late August 2025.

32. Roland contacted the City and alerted it to the fact that Roland had not been provided notice of this hearing date and requested that the hearing be rescheduled because Roland was unavailable on that date.

33. The City agreed to reschedule the appeal hearing until late September 2025.

34. In subsequent conversations between Roland and the City, it was agreed that the BZA would consider all of Roland's appeals at the same appeal hearing.

35. When Roland arrived at the appeal hearing in September 2025, however, it was revealed that the City had not put Roland's second notice of appeal on the agenda.

36. Instead, Roland learned that another local business (Puckett's Furniture) was on the agenda with a similar appeal from the denial of a sign permit application on the basis that the requested sign would be a "flashing sign" in violation of the Zoning Ordinance.

37. Puckett was on the September agenda because, like Roland, it was not given notice regarding the August hearing date.

38. At the conclusion of the September 2025 BZA hearing, the BZA voted to deny Roland's appeal and to affirm Mr. Rutherford's denial.

39. Because the City had failed to properly schedule Roland's second appeal for September 22 as agreed, Roland had to appear before the BZA on October 2025 to present its appeal of Mr. Rutherford's denial of Roland's applications for signs at 4205 Bradford Hicks Drive, 5476 Bradford Hicks Drive, 5490 Bradford Hicks Drive, 915 N. Church Street, 301 W. 7th Street, 716 N. Church Street, 1185 Preston Street, 512 W. Main Street, and 925 N. Church Street.

40. At the conclusion of the October meeting, the BZA voted to deny Roland's nine appeal and to affirm Mr. Rutherford's denials.

41. Even after denying Roland's ten sign permit applications on the basis that they would constitute a "flashing sign" in violation of the Sign Regulations, the City continues to allow others to install signs using changing sign technology even though such signs will violate the code's prohibition on flashing signs.

42. By way of example, the following sign was recently installed by a gas station in Livingston:[2]



43. Under the strict interpretation of the Sign Regulations' purported prohibition on flashing signs that was applied to Roland's applications, such a sign should have been prohibited.

44. Yet the City has allowed this sign to recently be erected.

45. Discovery will undoubtedly reveal further examples of the City saying one thing when it comes to applications submitted by Roland, and another when applicants than Roland request signs in the City.

---

[2] Additional examples will be uncovered through formal discovery.

46. Discovery will also reveal that there are countless examples of situations where preferred speakers have been excused from complying with the Sign Regulations at all.

## COUNT I

## VIOLATION OF FREE SPEECH

47. Roland incorporates herein by reference each of the allegations of set forth above as if they were fully restated herein.

48. It is well established that signs are a form of expression protected by the Free Speech Clause. E.g., City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994); also Prime Media, Inc. v. City of Brentwood, 398 F.3d 814, 818 (6th Cir. 2005) ("Billboards and other visual signs, it is clear, represent a medium of expression that the Free Speech Clause has long protected").

49. A licensing scheme, like the City's Sign Regulations, that subjects the exercise of First Amendment freedoms to the prior restraint of a license "must contain certain procedural safeguards in order to avoid constituting an invalid prior restraint." Feed the Children, Inc. v. Metro. Gov't of Nashville & Davidson County, 330 F. Supp. 2d 935, 943 (M.D. Tenn. 2002).

50. As the Supreme Court held in Forsyth County v. Nationalist Movement, 505 U.S. 123, 130 (1992), a prior restraint on speech "may not delegate overly broad licensing discretion to a government official." See also Shuttlesworth v. City of Birmingham, 394 U.S. 147, 150-51 (1969) ("a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional").

51. Here, the City's Sign Regulations fail to set forth narrow, objective, and definite standards to guide the City when making a determination on a permit application.

52. Further, established precedent dictates that in the prior restraint context, "the decision whether or not to grant a license must be made within a specified, brief period." Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, 274 F.3d 377, 400 (6th Cir. 2001).

53. The Livingston Sign Regulations fail to include any time limits on the processing of sign permit applications thereby creating the risk of the suppression of permissible speech. E.g., United States v. Frandsen, 212 F.3d 1231, 1239 (11th Cir. 2000) (when licensor has no real time limits "the risk of arbitrary suppression is as great as the provision of unbridled discretion").

54. Individuals companies like Roland, who desire to use signs in Livingston are purportedly required to submit for a permit, but the Sign Regulations contain no time period within which the City must grant or deny a sign permit.

55. The City's sign restrictions are also impermissibly content-based.

56. In the decision of Reed v. Town of Gilbert, 135 S. Ct. 2218, 2227 (2015), the Supreme Court held that "[g]overnment regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed." Id. at 2227 (citations omitted). The Court then deemed regulations exempting categories of signs such as "temporary directional signs," "political signs," and "ideological signs" were defined and regulated "entirely on the[ir] communicative content" and were thus content-based and subject to strict scrutiny. Id. The Court then held such regulations failed strict scrutiny. Id. at 2231.

57. The City's ordinance and the invalid sign code at issue in Reed are materially indistinguishable. Indeed, just like the Town of Gilbert regulations, the City regulations differentiate permissible signs based on their content. See, e.g., Sign Regulations, §§ 11-202.26;

11-202.44; 11-202.45; 11-203.9.1(c), (d), (h); 11-203.9.4(e) (defining numerous types of signs by their content and regulating and exempting certain messages).

58. Indeed, when determining whether or not to issue a permit to Roland, Mr. Rutherford explicitly requested Roland provide him with what type of content will be on the requested sign. Such reliance on the content of signs is impermissible. Reed, 135 S. Ct. at 2227 (noting different rules for political signs, temporary directional signs, and ideological signs and that "[t]he restrictions in the Sign Code that apply to any given sign [] depend entirely on the communicative content of the sign"). Reed remains the law of the land when it comes to considering whether sign codes are content-based. See City of Austin v. Reagan Nat'l Advert. of Austin, LLC, 142 S. Ct. 1464, 1474 (U.S. 2022) (reiterating that "regulations that discriminate based on 'the topic discussed or the idea or message expressed' [] are content based"). The many content-based provisions of the Livingston sign restrictions cannot be justified.

59. In addition to being content-based, the City's sign restrictions also unlawfully exempt all signs erected by the City from regulation. See Sign Regulations, § 11-203.9.1(h) (allowing government signs in any zoning district), § 11-203.9.4(e) (establishing that "no limitations, restrictions, or requirements herein are applicable to government signs"). As such, the City can lawfully post signs identical in all respects to the signs that Livingston has refused to allow Roland to display.

60. A broad exemption for government signs such as this has been viewed by courts in to be content-based and unable to survive strict scrutiny. E.g., Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1257-62 (11th Cir. 2005); Foti v. City of Menlo Park, 146 F.3d 629, 637 (9th Cir. 1998); Nichols Media Group, LLC v. Town of Babylon, 365 F. Supp. 2d 295,

14

Case 2:25-cv-00102    Document 1    Filed 12/16/25    Page 14 of 18 PageID #: 14

315-17 (E.D.N.Y. 2005); Clear Channel Outdoor, Inc. v. Town of Windham, 352 F. Supp. 2d 297, 309-10 (N.D.N.Y. 2005).

61. Moreover, discovery will show that the City has relied upon this exemption to display government signs that not only utilize changing sign technology but actually flash.

62. Based upon these and other bases that will be revealed through discovery, the City's Sign Regulations at issue are unconstitutional.

63. Because the regulations at issue are constitutionally deficient, they are a nullity and an invalid basis upon which to deny Roland's applications.

64. Additionally, pursuant to 42 U.S.C. § 1983, Roland is entitled to compensation for the damages he has suffered as a result of the City's enforcement of the unconstitutional sign restrictions and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, for filing this lawsuit and protecting its constitutional rights.

## COUNT II

## EQUAL PROTECTION VIOLATION

65. Roland incorporates herein by reference each of the allegations of set forth above as if they were fully restated herein.

66. As the United States Supreme Court recognized in Village of Willowbrook v. Olech, 528 U.S. 562 (2000), established precedent supports "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at 564. (citing Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923), and Allegheny Pittsburgh Coal Co. v. Commission of Webster County, 488 U.S. 336 (1989)). In Olech, the Court explained, "the purpose of the equal protection clause of the Fourteenth

15
Case 2:25-cv-00102    Document 1    Filed 12/16/25    Page 15 of 18 PageID #: 15

Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." 528 U.S. at 564 (citing Sioux City Bridge, 260 U.S. at 445, and Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352 (1918)) (internal quotations omitted).

67. Applying this precedent to the facts before it, the Supreme Court found, "Olech's complaint can fairly be construed as alleging that the Village intentionally demanded a 33-foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners." Olech, 528 U.S. at 565 (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Court further found that Olech had sufficiently "alleged that the Village's demand was 'irrational and wholly arbitrary' and that the Village ultimately connected her property after receiving a clearly adequate 15-foot easement. These allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis." Olech, 528 U.S. at 565.

68. Following the Supreme Court's decision in Olech, courts have routinely recognized a plaintiff's ability to proceed under the "class of one" theory. E.g., Franks v. Rubitschun, 312 F. App'x 764, 766 (6th Cir. 2009) (recognizing viability of "class of one" equal protection theory and reversing dismissal of plaintiff's equal protection claim); Arnold v. Metro. Gov't of Nashville & Davidson County, 2009 WL 2430822, at *3-4 (M.D. Tenn. Aug. 6, 2009) (recognizing "class of one" theory under Olech). In order for a plaintiff to successfully assert a "class of one" claim he must demonstrate "that [he] has been intentionally treated differently

from others similarly situated and that there is no rational basis for the difference in treatment." <u>Franks</u>, 312 F. App'x at 766 (citing <u>Olech</u>, 528 U.S. at 564).

69. Roland has evidence to establish: (1) that the City has denied his sign applications; (2) that the City allows similarly situated sign owners to operate their signs without being subject to the restrictions enforced against Roland; and (3) that Livingston cannot properly justify treating Roland differently than other sign owners.

70. Therefore, Livingston has deprived Roland of equal protection under the Fourteenth Amendment to the United States Constitution.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Roland Digital Media, Inc. respectfully requests that the Court provide the following relief:

(i) Find that the City's conduct has violated Roland's First Amendment Rights;

(ii) Find that the City's conduct has violated Roland's Equal Protection Rights;

(iii) For a trial by jury on all issues of fact;

(iv) To award Roland its reasonable and necessary attorneys' fees and costs, as allowed by statute and/or common law; and

(v) Grant Roland all such other relief, whether in law or in equity, upon which he may show himself justly entitled.

## **JURY TRIAL DEMAND**

Roland respectfully requests a trial by jury.

DATED this 16th day of December, 2025.

                                            Respectfully submitted,

BY:   */s/ Mark E. Tribble*
       Mark E. Tribble (#016358)
       TRIBBLE LAW PLLC
       13 South Jefferson Avenue
       Cookeville, TN 38501
       tribblelaw@gmail.com
       Telephone: (931) 854-9200

       */s/ E. Adam Webb*
       E. Adam Webb* (Ga. Bar 743910)
       G. Franklin Lemond, Jr.* (Ga. Bar. 141315)
       WEBB, KLASE & LEMOND, LLC
       1900 The Exchange, S.E., Suite 480
       Atlanta, GA 30339
       Adam@WebbLLC.com
       Franklin@WebbLLC.com
       Telephone: (770) 444-0773

       *Attorneys for Plaintiff*
       *Roland Digital Media, LLC*

       **Pro Hac Vice* Application to be filed