**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**COOKEVILLE DIVISION**

| | | |
|---|---|---|
| **ROLAND DIGITAL MEDIA, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:25-cv-00102** |
| | ) | |
| **CITY OF LIVINGSTON, TENNESSEE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

The First Amendment prohibits a municipal government from restricting expression because of its message, ideas, subject matter, or content. Consistent with that prohibition, municipalities, like the City of Livingston, Tennessee ("Livingston"), may permissibly impose content-neutral restrictions that have nothing to do with the sign's message, such as size, materials, lighting, and moving parts. This case concerns Livingston's enforcement of one of those ostensibly content-neutral restrictions—the "flashing-sign prohibition"—against Roland Digital Media, Inc. ("Roland"), an outdoor sign advertising company. In 2025, Livingston denied Roland's ten applications to erect digital advertising signs for the sole reason that they violated its prohibition on "flashing signs." But Roland alleges here and represented to Livingston that its digital advertising signs are not "flashing signs," so Roland brought this lawsuit.

Livingston moves to dismiss the Amended Complaint,[1] and the motion is ripe for review. (Doc. Nos. 25, 26, 34, 36, 37). The motion will be granted in part and denied in part. Roland's

---

[1] Before Roland amended its Complaint, Livingston moved for dismissal on similar grounds (Doc. Nos. 12, 19). That motion will be denied as moot. Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299, 306-07 (6th Cir. 2000) (holding that an amended complaint supersedes all previous complaints); Crawford v. Tilley, 15 F.4th 752, 759 (6th Cir. 2021) ("The general rule is that filing an amended complaint moots pending motions to dismiss.").

allegations concern only Livingston's application of the flashing-sign prohibition. Roland has standing to assert two claims that it has plausibly alleged: Roland's as-applied claim that the flashing-sign prohibition is an unconstitutional time, place, and manner restriction, and its claim that Livingston violated the Equal Protection Clause by treating similarly situated sign displayers differently. The remaining claims will be dismissed.

## I. FACTUAL ALLEGATIONS[2]

Roland operates outdoor advertising signs throughout Tennessee. (Doc. No. 23 ¶¶ 5–10). In 2025, Roland obtained permission from several property owners to erect digital signs on their property. Then it submitted ten permit sign applications to Livingston. (Id. ¶¶ 15–19, 36).

In response to Roland's first application, the City's Building Inspector and Codes Officer, Walter Rutherford, asked Roland whether its proposed sign would display on-premises advertising, off-premises advertising, or both. (Id. ¶ 21). Roland responded that it intended to display "every kind of message," including "on-premise and local messages," "religious and non-profit messages," messages for "local charities and promotion of the community," messages for "events, downtown," and "etc." (Id. ¶ 22). Rutherford denied the first application, and subsequently the remaining nine applications,[3] "on the sole basis" that the proposed digital sign would be defined a flashing sign under Section 11-202.22 of the Zoning Ordinance, prohibited by Section 11-203.9.2(e). (Id. ¶ 23).

---

[2] The Court draws the facts from the Amended Complaint (Doc. No. 23) and assumes their truth to decide the motion. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[3] While Roland's initial appeal remained pending, it submitted nine more applications for digital signs at other locations. (Id. ¶ 36). Rutherford denied each application "on the basis that they would constitute 'flashing signs' that are prohibited by the 2025 Zoning Ordinance." (Id. ¶ 37). Roland appealed those denials, and the Board of Zoning Appeals affirmed all ten. (Id. ¶¶ 38, 47–49).

The ordinance defines a flashing sign and prohibits flashing signs as follows[4]:

> **11-202.22 Flashing Sign**. A directly or indirectly illuminated sign on which artificial light is not maintained stationary and constant in intensity and color at all times in use.
>
> **11-203.9.2 Signs Prohibited in All Districts**
>
> . . . .
>
> (e) Flashing signs.

(Doc. No. 25-1 at 2, 4).

Roland appealed the denial of its applications to the Livingston Board of Zoning Appeals. On appeal, Roland represented that its "proposed digital display did not qualify as a 'flashing sign' since the messages that will be displayed on the sign will be maintained in a stationary position and will remain constant in intensity and color at all times when in use." (Id. ¶¶ 24–27). Roland also alleges that Rutherford's interpretation represented "a marked departure from the City's prior interpretation of its Zoning Ordinance." (Id. ¶ 28). Roland supported those allegations with "several examples of occasions where Livingston allowed sign applicants like Roland to install signs using digital technology." (Id. ¶ 29). The Amended Complaint includes photographs of a digital sign stating "WELCOME TO FIRST BAPTIST"; a digital sign incorporated into a brick sign for the Livingston/Overton County Chamber of Commerce; and a digital sign beneath a sign identifying the Overton County Health Department Community Health Center.[5] (Id. ¶ 30). Roland

[4] Roland does not attach to the Amended Complaint the ordinance it challenges, including the flashing-sign prohibition or any other challenged provision. The Court may properly consider the ordinance because it is referred to in the Amended Complaint and is central to Roland's claims. Berry v. U.S. Dep't of Lab., 832 F.3d 627, 637–38 (6th Cir. 2016).

[5] The Court reviews the photographs in the Amended Complaint as part of Roland's factual allegations in the light most favorable to Roland. See, e.g., Wysong Corp. v. APN, Inc., 889 F.3d 267, 269–270 (6th Cir. 2018) (assessing photograph included with complaint).

also includes a photograph of a Shell gas station sign displaying digital fuel prices that Livingston allowed to be installed "during the pendency of this case." (Id. ¶ 31). Roland's examples appear stationary but not constant in intensity or color.

Roland also alleges "that the City's refusal to allow Roland to utilize digital technology was problematic" because the ordinance "exempts government signs from regulation" such that "no limitation, restrictions, or requirements" in the ordinance "are applicable to government signs." (Id. ¶ 32). Livingston has used that exemption "to post electronic signs" with messaging at the Health Department and Chamber of Commerce and to "install a digital sign outside the Livingston Public Safety Building." (Id. ¶¶ 32–33). The photograph of the Public Safety Building sign depicts a digital display showing the temperature beside a public roadway. (Id. ¶ 33). That sign "is particularly offensive because it is truly a 'flashing sign' that utilizes full movement with zero hold time between messages." (Id. ¶ 34). The exemption allows Livingston and its "governmental partners to post a sign identical in all respects to the signs requested by Roland" while remaining "exempt from the rules that apply to Roland and everyone else." (Id. ¶ 35).

Roland challenges the sign ordinance under the First Amendment. First, without reference to a specific provision, it alleges that the ordinance operates as an unconstitutional prior restraint because it "fail[s] to set forth narrow, objective, and definite standards to guide the City when making a determination on a permit application" and contains "no time period within which the City must grant or deny a sign permit" "thereby creating the risk of the suppression of permissible speech." (Id. ¶¶ 57–62). Second, it alleges that the ordinance as a whole is content based because it "differentiate[s] permissible signs based on their content." (Id. ¶¶ 63–66). Roland specifically points to Rutherford's request that Roland identify "what will be advertised on the proposed sign" as evidence of content-based discrimination against it. (Id. ¶¶ 65–66). Third, it alleges that even

if the ordinance is content-neutral, the ordinance's time, place, and manner restrictions—"including but not limited to the City's size and height restrictions"—are not narrowly tailored to serve a significant governmental interest. (Id. ¶¶ 67–69). Fourth, it alleges that the government exemption allows Livingston to display "signs identical in all respects to the signs that Livingston has refused to allow Roland to display." (Id. ¶ 70). Livingston has used the exemption to display government signs that "not only utilize changing sign technology but actually flash." (Id. ¶ 73).

Roland also alleges that Livingston violated the Fourteenth Amendment's Equal Protection Clause. This occurred when Livingston denied Roland's applications while allowing sign owners "similarly situated to Roland in all respects—to include the Health Department, Chamber of Commerce, and various businesses in the City—to operate their signs without being subject to the restrictions enforced against Roland." (Id. ¶ 81).

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1)

"Rule 12(b)(1) motions to dismiss . . . generally come in two varieties: a facial attack or a factual attack." Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co., 491 F.3d 320, 330 (6th Cir. 2007). When a Rule 12(b)(1) motion challenges subject matter jurisdiction based on the face of the complaint, as this one does, the court "takes the allegations in the complaint as true" and evaluates jurisdiction accordingly. Id. The complaint must contain allegations sufficient to establish subject matter jurisdiction.

### B. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Venema v. West, 133 F.4th 625, 632 (6th Cir. 2025) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678). When determining whether the complaint meets this standard, the Court must accept the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018).

## III. ANALYSIS

Livingston seeks dismissal because Roland lacks standing to challenge several provisions of the ordinance, that prior litigation between the parties precludes its claims, and that the Amended Complaint otherwise fails to state a First Amendment or equal protection claim. (Doc. No. 26 at 1–25). The Court begins with Livingston's preclusion argument. It then addresses standing under Article III to determine which of Roland's constitutional challenges the Court has subject matter jurisdiction. Finally, the Court considers what allegations state a claim.

### A. Claim and Issue Preclusion

Livingston contends that Roland's claims are barred by res judicata or collateral estoppel based on prior litigation between the parties.

Res judicata includes claim preclusion and issue preclusion. Cont'l Cas. Co. v. Indian Head Indus., Inc., 941 F.3d 828, 835 (6th Cir. 2019). Claim preclusion bars legal claims that were or could have been raised in prior litigation, but requires a "final decision on the merits." Id. Collateral estoppel, or issue preclusion, bars relitigation of an issue actually adjudicated in prior litigation, but only when the issue "is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment" in that case. Id.

In 2016, Roland sued Livingston after it denied Roland's applications to erect billboards and challenged Livingston's 2016 sign ordinance. Roland Digital Media, Inc. v. City of Livingston ("Roland I"), No. 2:17-CV-00069, 2018 WL 6788594, at *1–2 (M.D. Tenn. Dec. 26, 2018).

Roland I concerned the version of Livingston's sign ordinance in effect in 2016 and Roland's applications to erect billboards, not the digital signs as here. Roland's first application sought an 11-by-24-foot off-premises billboard, and three later applications sought 10½-by-24-foot double-faced off-premises billboards. Id. at *1. The 2016 ordinance limited off-premises signs to nine square feet. Livingston denied Roland's first application because the proposed billboard exceeded that size limitation. Id. at *1–2. Roland, however, did not challenge the size restriction. Id. at *2. Instead, it challenged the 2016 ordinance because it favored commercial over noncommercial speech, contained unconstitutional content-based restrictions, and effectively banned its billboards. Id. at *2, *5–10.

On cross-motions for summary judgment, id. at *1, 13, the Court concluded that Roland's lack of standing was dispositive. It held that Roland "lack[ed] standing to pursue its challenges under prevailing Sixth Circuit law" because Roland only had standing to challenge the size restrictions, which was not at issue, not other independent provisions of the ordinance. Id. at *4–5, *8. Though the standing issue was dispositive, for the sake of completeness, the Court assumed that Roland had standing and addressed the merits anyway. Id. The Court then rejected Roland's legal arguments that the ordinance favored commercial over noncommercial speech, imposed impermissible content-based restrictions, and amounted to a total ban on signage. Id. at *5–10. But that merits analysis was dicta because a decision in Roland's favor would not have changed the outcome of the case—i.e., dismissal for lack of standing/subject matter jurisdiction.

Because the prior litigation produced neither a "final decision on the merits" on Roland's claims, nor a determination of issues presented here that was "essential to the judgment," claim and issue preclusion are inapplicable. Cont'l Cas. Co., 941 F.3d at 835.

B. Standing

Roland has standing to challenge the flashing-sign prohibition, but not other provisions of the ordinance. Livingston argues that Roland lacks standing because Roland "deliberately applied for permits to construct signs that [it] knew were illegal," did not challenge the flashing-sign prohibition that caused the denials, and suffered no redressable injury because the proposed signs "violated the law." (Doc. No. 26 at 1–3). Roland contends that it "clearly challenged the City's reliance on the purported prohibition on flashing signs in its Amended Complaint." (Doc. No. 36 at 7). Roland also responds that it has standing to challenge "the ordinances at issue" and "any fatal defects that render the regulations invalid" because it "suffered a concrete and actual injury when its permits were denied" that "was caused by the City's application of the relevant ordinances." (Id. at 6).

The dispositive standing issue is Roland's allegation that: . Livingston denied Roland's sign permit applications "on the *sole* basis" that the signs would violate the flashing-sign. (Doc. No. 23 ¶¶ 23, 37 (emphasis added)). Yet Roland alleges constitutional violations in the ordinance based on more than that discrete provision. It alleges that the ordinance operates as an unconstitutional prior restraint; that unspecified provisions impose content-based restrictions; that unspecified time, place, and manner restrictions are not narrowly tailored; and that the exemption for government signs is unconstitutional. (Id. ¶¶ 55–82). The distinct injury that Roland alleges from enforcement of the flashing-sign provision does not give it standing to bring unrelated broader constitutional challenges.

"Federal courts," the Supreme Court has explained, "are courts of limited jurisdiction." See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Consistent with that limited jurisdiction, federal courts "do not possess a roving commission to publicly opine on every legal question." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). The text of the

Constitution instead limits a federal court's jurisdiction to only "Cases" and "Controversies" listed in Article III. U.S. Const. art. III, § 2, cl. 1.

For Roland's "lawsuit to constitute a case within the meaning of Article III," it "must have standing to sue." Diamond Alt. Energy, LLC v. EPA, 606 U.S. 100, 110 (2025). Roland must allege facts that satisfy three elements: "injury in fact, causation, and redressability." Id. at 111 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). Each standing element must be established for each claim Roland brings. Universal Life Church Monastery Storehouse v. Nabors, 35 F.4th 1021, 1031 (6th Cir. 2022).

To establish an injury in fact, Roland must allege an injury that is "concrete," "particularized," and "actual or imminent, not speculative." FDA v. All. for Hippocratic Med., 602 U.S. 367, 381 (2024). Causation requires Roland to allege that its injury "likely was caused" by Livingston's conduct. Id. at 382. Causation and redressability often operate as "flip sides of the same coin," so if Roland sufficiently alleges that Livingston caused its injury, "enjoining the action or awarding damages for the action will typically redress that injury." Id. at 381.

Sixth Circuit precedent requires Roland to establish standing for each provision of the sign ordinance that it challenges. In Prime Media, Inc. v. City of Brentwood, Prime Media, an outdoor advertising company, sought to erect billboards in the City of Brentwood. 485 F.3d 343, 345–46 (6th Cir. 2007). Brentwood denied the applications because the proposed billboards violated the ordinance's size, height, and off-premises restrictions. Id. at 346. Brentwood later amended the ordinance to remove the off-premises restriction, and the Sixth Circuit upheld the size and height restrictions. Id. at 346–47. On remand, Prime Media continued to challenge several other provisions of the ordinance under the First Amendment, Equal Protection Clause, and Due Process Clause. Id. at 347–48. The question presented was whether Prime Media's injury from

enforcement of the size and height restrictions—the only basis for denying its permits that remained in the case—gave it standing to pursue those other challenges. Id. at 348.

The Sixth Circuit held that it did not and affirmed the district court's dismissal for lack of standing. Prime Media's standing to challenge the size and height restrictions that caused its injury did not "magically carry over to allow it to litigate other independent provisions of the ordinance without a separate showing of an actual injury under those provisions." Id. at 350. Instead, the "critical inquiry" was whether Prime Media could "allege an injury arising from the specific rule being challenged, rather than an entirely separate rule that happens to appear in the same section of the municipal code." Id. at 351. According to the Sixth Circuit, Prime Media could not. The "remaining portions of the ordinance" had "not caused" and did "not imminently threaten any injury to Prime Media" because it had "not been subject to or affected by the other ordinance provisions challenged in its remaining claims." Id. at 352. Its challenges to those provisions, therefore, presented only "speculative and abstract" injuries that a federal court could resolve only by "speculating about the impact of the ordinance, rather than adjudicating an actual case or controversy." Id. at 353.

This Court applied Prime Media to Roland's 2016 challenge to Livingston's sign ordinance, and its reasoning remains persuasive. Recall in that case, Livingston denied Roland's applications solely because its proposed billboards exceeded the ordinance's size restrictions. Roland I, 2018 WL 6788594, at *2. Instead of mounting any challenge to those size restrictions, Roland challenged other provisions of the ordinance. Id. at *2, *5–10. Like Prime Media, the size restrictions caused Roland's injury, but that injury did not carry over to allow it to challenge other independent provisions of the ordinance. Id. at *4, *8. The Court held that Roland "lack[ed] standing to pursue its challenges under prevailing Sixth Circuit law." Id. at *5.

Applying well accepted standing law here, Roland has standing to challenge the denial of its sign applications based on Livingston's enforcement of the flashing-sign prohibition. Livingston denied Roland's applications "on the *sole* basis" that Roland's proposed signs violated the flashing-sign prohibition. (Doc. No. 23 ¶¶ 23, 37 (emphasis added)). Those denials harmed Roland's business and its right to engage in commercial speech. Livingston caused that injury by enforcing the flashing-sign prohibition against Roland's proposed signs. A favorable decision invalidating that prohibition or its enforcement against Roland would redress the injury by removing the sole alleged basis for the denials. Likewise, awarding Roland compensatory damages would redress the monetary harm it suffered as a result of the denials. Roland has standing to challenge the constitutionality of the flashing-sign prohibition on its face and as applied to Roland. Roland *does* allege violations of the flashing-sign prohibition, so it has standing to that extent. However, Roland does not have standing for other challenges that extend beyond the flashing-sign prohibition.

Roland's First Amendment claims present those standing issues in two ways. First, Roland directly alleges violations of the sign ordinance other than the flashing-sign prohibition. Roland's prior restraint claim alleges that the sign ordinance fails to provide a time limit for deciding permit applications, and its differential treatment claim alleges a violation under the exemption for government signs. (Doc. No. 23 ¶¶ 57–62, 70–76). Neither the lack of a time limit for Livingston to decide sign permit applications nor the exemption for government signs caused the denial of Roland's permit applications. (Doc. No. 23 ¶¶ 23, 37).

To underscore the point, consider what would happen if the Court granted Roland relief on both of those claims. Even if the Court required Livingston to impose a time limit for deciding permit applications, and even if the Court invalidated the exemption for government signs, the

flashing-sign prohibition would remain in place, and the denial of Roland's applications would still stand. Roland, therefore, suffered no cognizable injury from Livingston's failure to impose a time limit or its exemption of government signs from the flashing-sign prohibition. Its standing to challenge the flashing-sign prohibition does not "magically carry over" to those claims. Prime Media, 485 F.3d at 350–53; see also Roland I, 2018 WL 6788594, at *4, *8.

Second, Roland alleges violations of an unspecified number of provisions beyond the flashing-sign prohibition. Roland's content-based claim alleges violations under the ordinance's "many content-based provisions" and cites various provisions of the ordinance other than the flashing-sign prohibition. (Id. ¶¶ 63–66). And its time, place, and manner claim alleges violations of the "time, place, and manner restrictions—including but not limited to the City's size and height restrictions." (Id. ¶¶ 67–69). The broad and generic language in those allegations encompasses the flashing-sign prohibition but also extends to other provisions. Roland has standing to pursue both claims as challenges to the flashing-sign prohibition. But again, its standing does not "magically carry over" to the other provisions swept into those claims. Prime Media, 485 F.3d at 350; Norton I, 99 F.4th at 846; see also Roland I, 2018 WL 6788594, at *8.

Roland's equal protection claim stands on different footing. Roland alleges that Livingston enforced the flashing-sign prohibition against it while allowing other allegedly similarly situated sign displayers to operate digital signs. (Doc. No. 23 ¶¶ 77–82). Roland thus has standing to pursue that claim.

In sum, Roland has standing to challenge *only* the flashing-sign prohibition on two grounds: that it is an unconstitutional content-based restriction, both on its face and as applied to Roland, and that it is an unconstitutional time, place, and manner restriction, both on its face and

as applied to Roland. Based on its allegations, Roland also has standing to assert an Equal Protection claim. The Court turns to the merits of those claims.

C. First Amendment Claims

Roland's allegations are not a model of clarity. Giving the Amended Complaint a robust reading in Roland's favor, however, the Court understands Roland to challenge the flashing-sign prohibition both on its face and as applied to its proposed signs. Roland alleges that the regulations in the sign ordinance are content based, which encompasses the flashing-sign prohibition that Roland has standing to challenge. (Doc. No. 23 ¶¶ 63–66).

Government regulation of speech is content based if it "applies to particular speech because of the topic discussed or the idea or message expressed." Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 163 (2015). Such content-based regulations "can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Id. at 171 (internal quotation marks omitted).

The flashing-sign prohibition is content neutral on its face. The flashing-sign prohibition prohibits a sign based on whether it uses "artificial light" that "is not maintained stationary and constant in intensity and color," (Doc. No. 25-1 at 2, 4), without regard to the communicative content of the message. Reed, 576 U.S. at 163. Indeed, Justice Alito in his concurring opinion in Reed specifically identified "[r]ules distinguishing between lighted and unlighted signs" and "[r]ules distinguishing between signs with fixed messages and electronic signs with messages that change" as examples of content-neutral sign regulations. Id. at 174 (Alito, J., concurring).

Roland's allegations do not support an inference that Livingston applied the flashing-sign prohibition to Roland to discriminate against it based on the content of its proposed signs. Roland alleges that Rutherford had some "initial questions concerning what will be advertised on the proposed sign" and asked whether the signs would be used for "[o]ff-[p]remise," "[o]n-[p]remise,"

or both types of advertising. (Id. ¶ 21). Roland further alleges that Rutherford "explicitly requested" that "Roland provide him with what type of content will be on the requested sign" and that such "reliance on the content of signs is impermissible." (Doc. No. 23 ¶ 66). Though it's curious that Rutherford asked Roland what would be displayed on the signs, Roland's own response defeats any inference of content-based application. Roland responded that "[t]he sign will be used for *every* kind of message," including "on-premise and local messages," "religious and non-profit messages," messages for "local charities and the promotion of the community," messages for "downtown, events," and "etc." (Id. ¶ 22 (emphasis added)). Because Roland proposed to display "every kind of message" (id.), Rutherford could not have considered the communicative content of any particular message in denying the application. Instead, as Roland alleges, Rutherford denied the application "on the *sole* basis" that the proposed digital sign qualified as a flashing sign under the ordinance. (Id. ¶ 23 (emphasis added)). Roland's own allegations thus undermine any inference that Livingston used the flashing-sign prohibition to discriminate against it based on the content of its signs. Roland has not sufficiently alleged that the flashing-sign prohibition is content based on its face or that Livingston applied it to Roland based on the content of its proposed signs.

The ordinance defines a flashing sign as "a directly or indirectly illuminated sign on which artificial light is not maintained stationary and constant in intensity and color at all times in use." (Doc. No. 25-1 at 2). The Sixth Circuit recently considered a similar prohibition in Norton Outdoor Advert., Inc. v. Vill. of St. Bernard, Ohio ("Norton II"), 168 F.4th 897 (6th Cir. 2026). There, the sign ordinance prohibited, among other things, "variable message outdoor advertising signs," defined as signs "whose message is partially changed by electronic process or remote control." Id. at 903. The Sixth Circuit reaffirmed that, in the context of such cases, "governmental interests in

aesthetics, traffic safety, and the preservation of property values constitute 'significant governmental interests.'" Id. at 910 (quoting Hucul Advert., LLC v. Charter Twp. of Gaines, 748 F.3d 273, 277–78 (6th Cir. 2014)). The Sixth Circuit then upheld the prohibition on variable-message signs, finding the prohibition to be narrowly tailored to those interests. Id. at 911. But here Livingston applies the flashing sign prohibition to totally censure Roland's commercial speech. Livingston does so even though Roland maintains its signs do not qualify as flashing signs. Roland thus states a First Amendment challenge to the flashing-sign prohibition.

Roland's as-applied challenge also survives. As applied to Roland, Livingston burdened Roland's commercial speech rights by denying it permission to display its signs. Roland alleges that its digital signs are not flashing signs because they will "maintain a stationary position" and "remain constant in intensity and color."[6] (Doc. No. 23 ¶ 25). Roland's proposed signs thus fall outside the ordinance's definition of a flashing sign. (Doc. No. 25-1 at 2). If Roland's proposed signs are not flashing signs, as Roland alleges and Court accepts as true, applying the prohibition to them necessarily sweeps in more speech than the time, place, and manner restriction is designed to regulate. Put differently, applying the prohibition to signs that lack the characteristics that the prohibition targets burdens more speech than necessary to advance Livingston's legitimate interests.

[6] That allegation appears to concern only Roland's first sign application. The Amended Complaint later alleges that Livingston denied nine additional applications under the flashing-sign prohibition, but Roland does not allege that those proposed signs, like the first, would "maintain a stationary position" and "remain constant in intensity and color." (Doc. No. 23 ¶¶ 25, 37). The Amended Complaint is unclear whether Roland intends its allegation in paragraph 25 to apply to all ten proposed signs. At this stage, the Court construes that ambiguity in Roland's favor and understands Roland to allege that the proposed signs underlying each application did not qualify as flashing signs.

D. Equal Protection Claim

Roland's equal protection claim also survives at this stage. To state a class of one equal protection claim, Roland must allege that Livingston treated it "differently from others similarly situated" and that "there is no rational basis for such difference in treatment." Andrews v. City of Mentor, Ohio, 11 F.4th 462, 473 (6th Cir. 2021) (quoting Warren v. City of Athens, 411 F.3d 697, 710 (6th Cir. 2005)). "When evaluating whether parties are similarly situated, 'courts should not demand exact correlation, but should instead seek relevant similarity.'" Id. at 474 (quoting EJS Props., LLC v. City of Toledo, 698 F.3d 845, 865 (6th Cir. 2012)).

Roland alleges that Livingston "denied its sign applications" while allowing "sign owners who are similarly situated to Roland in all respects" to "operate their signs without being subject to the restrictions enforced against Roland." (Doc. No. 23 ¶ 81). Roland specifically identifies "the Health Department, Chamber of Commerce, and various businesses in the City" as examples of those sign owners, and it alleges that "Livingston cannot properly justify treating Roland differently" from them. (Id.). Those allegations state a class of one claim. Roland alleges that Livingston treated similarly situated sign owners differently by allowing them to display signs while denying Roland permission to do the same. Andrews, 11 F.4th at 473.

Despite these deficiencies in Roland's comparator allegations, the Sixth Circuit instructs that courts "should not demand exact correlation, but should instead seek relevant similarity." Andrews, 11 F.4th at 474. Roland expressly alleges that the comparator sign owners were "similarly situated to Roland in all respects." (Doc. No. 23 ¶ 81). The Court construes the deficiencies and ambiguities in Roland's comparator allegations in its favor. Livingston may ultimately defeat Roland's claim by establishing at summary judgment that its alleged comparators are not similarly situated. For now, Roland has sufficiently alleged the "relevant similarity" required for a class of one claim. Andrews, 11 F.4th at 474.


Case 2:25-cv-00102 Document 42 Filed 09/03/26 Page 16 of 17 PageID #: 1091

## IV. CONCLUSION

For the reasons set forth above, the first motion to dismiss (Doc. Nos. 12, 19) will be denied as moot. The motion to dismiss the Amended Complaint (Doc. No. 25) will be granted in part and denied in part.

An appropriate order will enter.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE